**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eddie Lee STONE, Defendant-Appellant.**

**No. 79–5116.**

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1979.

Kenneth E. Brooten, Jr. (court-appointed) Gainesville, Fla., for defendant-appellant.

Nickolas P. Geeker, U. S. Atty., J. Worth Owen, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before THORNBERRY, CLARK and KRAVITCH, Circuit Judges.

THORNBERRY, Circuit Judge:

In this appeal from a conviction for possession of stolen mail we must decide whether the government violated the hearsay rule and the defendant's right of confrontation when the government used an affidavit instead of live testimony for the purpose of explaining how an official record demonstrated that the Treasury Department mailed a check that the defendant later had in his possession. We find that this special use of the affidavit violates the hearsay rule and the defendant's confrontation right. This violation does not require a reversal, however, because under these circumstances it constitutes harmless error.

## I.

Stone was convicted in a jury trial under 18 U.S.C. § 1708[1] for possession of an item, in this case a United States Treasury check, stolen from the mails. Stone was acquitted of uttering the same check.

To prove that the check was in the mail, the government presented as a witness Gwendolyn G. Howard, the payee of the check in question. Howard testified that she was employed by a Veterans Administration Hospital in Florida during 1975, and that she received her paycheck in the mail every two weeks at her residence. She identified a check dated June 30, 1975 as her payroll check for that period, and testified that she never received it. When she failed to receive her check in the mail on June 30, 1975, she obtained a duplicate check at the hospital. Her original check dated June 30, 1975, and numbered 69,137,606 was found to have been in Stone's possession, and was introduced into evidence.

The government also presented a progress sheet[2] from the Treasury Department's Regional Disbursing Center in Austin, Texas, for the purpose of showing that the check had been placed in the mail. The sheet was an official disbursement form that was marked in part as follows: "PAYMENT DATE 6–30–75 ." "OBJECT SALARY," and "AGENCY: VA: COMPOSITE–BULK–DIRECT." The sheet specified that 99,625 "checks or bonds" were disbursed on that date in a total amount of $65,751,002.39. Checks or bonds numbered 69,108,660 to 69,205,121 were under the category "Direct." The sheet was marked to show the various stages of processing checks. In particular, the checks were marked "mailed or delivered" and "Date and time released: 6/27/75 4:00." The government authenticated this document by attaching an affidavit from staff assistant Alan Ford, the officer with legal custody and direct supervision of the progress sheets. Ford's affidavit identified his position in the first paragraph, then stated that

I further certify that the attached document is a true copy of Treasury Department disbursing records related to check number 69,137,626, dated June 30, 1975, payable to Gwendolyn G. Howard, 2120 E University AV, NO 14, Gainesville, FL

1. 18 U.S.C. § 1708 provides that

 Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

 Whoever steals, takes, or abstracts or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

 Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

 Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. A copy of the progress sheet is appended to this opinion.

32601, in the amount of $219.91, issued by G. Clark, Regional Disbursing Officer, over symbol 2205. It consists of a photographic copy of the Progress Sheet used to control the issuance and mailing of the check indicating that such check was individually inserted in an envelope and was mailed on June 27, 1975 with a group of other individually enclosed checks bearing the serial numbers 69,019,681 to 69,205,121.

Counsel for Stone made proper objections against the admission of the affidavit with these explanatory sentences. The judge overruled the objections, and allowed the full affidavit into evidence. Neither the government nor Stone called Ford to testify in person, although no evidence suggests he was unavailable for the trial. The hearsay and confrontation issues are the only points raised on appeal.

## II.

Stone does not challenge the admissibility of the progress sheet itself. This sheet was properly admitted under the hearsay exceptions in Fed.R.Evid. 803(6) for records of regularly conducted activity and Fed.R. Evid. 803(8) for public records and reports. The sheet was properly authenticated under Fed.R.Evid. 902(4) by Ford's attached affidavit.

■ Stone challenges the admission only of the extraneous explanatory statements in Ford's affidavit. To satisfy the requirements of Fed.R.Evid. 902(4), Ford's authenticating affidavit needed only to identify his position of authority and to state that the copy was correct. Ford's affidavit includes these items. Ford's affidavit goes on, however, to explain in detail that the progress sheet refers to Howard's particular check, and that the sheet shows that Howard's check was actually placed in the mail, although the sheet itself only states that certain numbered checks were "mailed or delivered." The admission of these statements without Ford's actual testimony pre-

vented Stone from cross-examining Ford about his explanation of the form.

■ At oral argument counsel for the government displayed little concern for Stone's need to cross-examine Ford. Government counsel asserted that they typically use such ex parte affidavits to explain the meaning of office records in litigation. The government's frequent and flagrant use of this method for proving an essential element of a crime does not justify its impropriety. When an ex parte affidavit presents evidence beyond the simple authentication requirements of Fed.R.Evid. 902(4), the extraneous portions of the affidavit constitute inadmissible hearsay under Fed.R.Evid. 801. The government relied upon *Whiteside v. United States,* 346 F.2d 500 (8 Cir. 1965), *cert. denied,* 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025 (1966), to show that an affidavit and progress sheet can be used to prove that a check was mailed under 18 U.S.C. § 1708. In *Whiteside,* however, the regional disbursing officer actually appeared and testified in the case; the defendant's right to cross-examine the witness was preserved.

■ The government contends that Ford's statements in the affidavit should be admissible under the hearsay exception for public reports in Fed.R.Evid. 803(8)(A). This section provides that

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * * * * *
>
> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency . . . . .

This hearsay exception is designed to allow admission of official records and reports prepared by an agency or government office for purposes independent of specific litigation. *See, e. g., Ellis v. Capps,* 500 F.2d 225, 226 n.1 (5 Cir. 1974) (allowing

admission of official records compiled in prison's "regular course of business"); *United States v. Newman,* 468 F.2d 791, 795–96 (5 Cir. 1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973) (same). This exception for an agency's official records does not apply to Ford's personal statements prepared solely for purposes of this litigation. Ford's statements are likely to reflect the same lack of trustworthiness that prevents admission of litigation-oriented statements in cases such as *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed.2d 645 (1943).

 The trial judge erred in not striking out those portions of Ford's affidavit that exceed the simple authentication requirements of Fed.R.Evid. 902(4). This error does not require reversal of Stone's conviction, however, because under the circumstances of this case the hearsay violation was harmless. When an error is not of constitutional magnitude, it is not grounds for reversing a conviction if the error had no substantial influence, and enough evidence supports the result apart from the phase affected by error. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Rodriguez,* 573 F.2d 330, 334 (5 Cir. 1978). We find that admission of the extraneous paragraph in Ford's affidavit had no substantial influence on the result, and that the jury finding that Howard's check was in the mail is supported by ample evidence apart from Ford's affidavit. Howard gave actual testimony that, with the exception of her check dated June 30, 1975, she received her paychecks in the mail every two weeks during the time she worked at the VA Hospital. Given this testimony, the jury could infer that the progress sheet refers to Howard's check, and that the check was placed in the mail. The date, the designations "VA" and "SALARY," and the ranges of serial numbers all suggest that Howard's check is within the batch of checks described on the sheet. The serial number on Howard's check places it in the "Direct" category, which indicates that the check was mailed directly to Howard. The sheet shows the enormous number of checks that were disbursed on a single day. From this information the jury could infer that personal delivery to each individual payee would be impossible, and that the designation "mailed or delivered" with regard to Howard's check indicates that her check was mailed. In light of Howard's testimony that she always received her paychecks in the mail and the language on the progress sheet itself, the admission of Ford's extraneous explanation does not constitute a substantial influence upon the jury's finding that the check had been mailed. This conclusion is consistent with our decision in *United States v. Gossman,* 455 F.2d 967 (5 Cir. 1972) (per curiam). Under similar facts in that case we held that the admission of affidavits to establish that checks had been mailed did not constitute prejudicial error. 455 F.2d at 969. *See also Smith v. United States,* 343 F.2d 539, 544 (5 Cir. 1965), *cert. denied,* 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965) (no direct testimony of mailing required to support conviction for possession of stolen mail).

### III.

 Stone contends that the admission of Ford's hearsay statement violates his sixth amendment right to confront the witness against him. Although a violation of the evidentiary hearsay rule does not establish that the constitutional right of confrontation has been denied, prevention of ex parte affidavits, like the extraneous statements in Ford's affidavit, is the primary purpose for the constitutional right of confrontation. *California v. Green,* 399 U.S. 149, 156–59, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489, 495–97 (1970). When the government introduced into evidence the explanatory statements in Ford's affidavit, and did not present Ford as a witness or show that he was unavailable, Stone's sixth amendment right of confrontation was denied. Although the government's method

of presenting testimony cannot be justified, we find that, under the circumstances of this case, the error was harmless beyond a reasonable doubt, and that the conviction should be affirmed according to *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Howard's testimony that she always received her paychecks in the mail and the language on the progress sheet itself provide such overwhelming proof of mailing that the denial of Stone's confrontation right is harmless beyond a reasonable doubt. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 26 L.Ed.2d 284 (1969) (denial of confrontation rights constitutes error harmless beyond a reasonable doubt on record showing overwhelming evidence of guilt). Stone's situation is distinguishable from *Harryman v. Estelle,* 597 F.2d 927 (5 Cir. 1979), *rehearing granted en banc,* 602 F.2d 1244 (5 Cir. 1979), which held that admission of a confession in violation of the defendant's *Miranda* rights did not constitute harmless error. Unlike Harryman's confession, Ford's statement in the affidavit did not constitute "overpowering, inescapable evidence for the jury." 597 F.2d at 930. Howard's testimony and the progress sheet itself show beyond a reasonable doubt the absence of a reasonable possibility that Ford's statement might have contributed to the conviction. *Id.*

### IV.

We hold that the admission into evidence of explanatory statements on an authenticating affidavit constitutes inadmissible hearsay when the person making the statements is available, but does not testify at the trial. Because the defendant had no opportunity to cross-examine the person making the statement, admission of the explanatory statements also violates the defendant's sixth amendment right to confront the witnesses against him. The government's practice of using explanatory affidavits as a substitute for live testimony cannot be tolerated. We find in this case, however, that the admission of these statements was not a substantial influence upon the result, and was harmless beyond a reasonable doubt. For this reason, we affirm appellant's conviction in the court below.

AFFIRMED.

Appendix to follow.

## APPENDIX

| THE DEPARTMENT OF THE TREASURY<br>DIVISION OF DISBURSEMENT<br>FORM NO. RO-1691 (Rev. 3/72) | PROGRESS SHEET | LOT NO. 204<br>CHECK SYMBOL 2205<br>PAYMENT DATE 6-30-75<br>OBJECT SALARY |
|---|---|---|

AGENCY: VA: COMPOSITE - BULK - DIRECT

| METH. OF PREP. | EDP-1 | TYPED-2 | MF-3 | BF-4 | THERMO-5 | | PROGRESS SHEET PREPARED |
|---|---|---|---|---|---|---|---|
| TYPE OF PAY. FA | 748 | | | | | | |
| TYPE OF PAY. NA | | | | | | | D.O. VOUCHER NO. |

| PROG.<br>TITLE NO. | AGENCY<br>INITIALS & LOCATION | BUREAU<br>SCHEDULE<br>NO. (EDP) | NO. OF<br>CHECKS<br>OR BONDS | NO.<br>OF<br>VOU. | NET. CERT.<br>AMOUNT | CHECK AND/OR BOND NUMBERS |
|---|---|---|---|---|---|---|
| 3600 | | | | 1 | | TO |
| | COMPOSITE | | 3163 | | 11671798.76 | 69019681 TO 69022843 |
| | | | | | | TO |
| | BULK | | 85816 | | 25744413.87 | 69022844 TO 69108659 |
| | | | | | | TO |
| | DIRECT | | 96462 | | 28334789.76 | 69108660 TO 69205121 |
| | | | 3163 | | | |
| | | | 97625 | | | CHECKS NUMBERED 7MC CHECKS ASSIGNED WD |
| | | | | | | CHECKS VOID NO ISSUE |
| | | NO. INTERPRETED | | | | |
| | TOTALS.... | | 185441 | 1 | 65751002.39 | |

REMARKS:

| | |
|---|---|
| | EDP PROCESSES:<br>FILE MAINTENANCE RUN — WS |
| | PRELIMINARY BALANCE — WD |
| | EDIT/DISTRIB. RUN — WS |
| | PUNCH RUN — JG |
| | PRINT RUN — QM |
| TOTAL CERTIFIED AMOUNT (ACCOUNT 4.10) $ 75400109.22 | EXCEPTION NOTICE REPLS. ACCOMPLISHED — NJt |
| DEDUCTIONS (NO CHECKS) $ 9649106.83 | BALANCE AND CLEARANCE — NJC |
| | NON-EDP PROCESSES:<br>CHECKS KEYPUNCHED OR REPRODUCED |
| NET TOTAL (CHECKS ISSUED-ACCOUNT 2.10) $ 65751002.39 | CHECKS INTERPRETED |
| | CHECKS PREPARED |
| TOTAL MACHINE AMOUNT $ 65751002.39 | CHECKS VERIFIED |
| DEDUCT AMOUNT SPOILED CHECKS AND/OR<br>EXCEPTION NOTICES $ 165810.58 | REPLS. VERIFIED AND INSERTED |
| | CHECKS TABULATED |
| NET TOTAL $ 65585191.81 | COMMON PROCESSES:<br>SORT OR MERGE OPERATION — 2CJ |
| ADD CHECKS REISSUED AND/OR<br>EXCEPTION NOTICES $ 165810.58 | CHECK SIGNING & MICROFILMING<br>REEL AND BATCH |
| TOTAL AMOUNT OF CHECKS $ 65751602.39 | CHECKS INSPECTED — 2CA |

THE TOTAL AMOUNT OF CHECKS IS CERTIFIED TO BE THE SAME AS THE PRE-DETERMINED LOT TOTAL SHOWN ON THE PROGRESS SHEET AND THE TOTAL OF ALL THE CHECKS IN THE LOT SHOWN ON THE TABULATED CHECK LIST.

OR

I CERTIFY THAT THE TOTAL MACHINE AMOUNT INDICATED HEREON IS IN AGREEMENT WITH THE AGENCY CERTIFIED AMOUNT AND THAT ALL DOCUMENTS RELATING TO THIS WORK GROUP ARE ACCOUNTED FOR AND COMPLETED IN ACCORDANCE WITH ESTABLISHED PROCEDURES.

BALANCE CLERK OR PAYMENT CONTROL CLERK _____

| |
|---|
| CHECKS ENCLOSED (MANUALLY) |
| CHECKS ENCLOSED (MACHINE) |
| CHECKS SIGNED & ENCLOSED |
| CHECKS MAILED OR DELIVERED: |
| DATE AND TIME RELEASED: 6/27/75 4:00 |

(SEALED)