**Richard L. THORNTON and Bill Cantrell, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

No. 82–7187.

United States Court of Appeals, Eleventh Circuit.

Sept. 26, 1983.

---

Robison & Belser, David B. Byrne, Jr., John M. Bolton, III, Montgomery, Ala., for petitioners.

Raymond W. Fullerton, Asst. Gen. Counsel, Aaron B. Kahn, Washington, D.C., for respondent.

Before TJOFLAT, VANCE and CLARK, Circuit Judges.

VANCE, Circuit Judge:

Petitioners appeal the decision of the Judicial Officer affirming the decision of the Administrative Law Judge (ALJ) finding them in violation of the Horse Protection Act, as amended, 15 U.S.C. §§ 1821–1831.

■ Senator's Flower, a Tennessee walking horse, was shown by her trainer, Bill Cantrell, and her owner, Richard Thornton, at the 40th Annual Tennessee Walking Horse National Celebration Horse Show on August 27, 1978. Two United States Department of Agriculture (USDA) veterinarians, posted at the show to monitor regulatory compliance, independently observed that Senator's Flower showed signs or symptoms of "soring" within the meaning of section 2(3) of the Act, 15 U.S.C. § 1821(3).[1] Soring essentially consists of

1. (3) The term "sore" when used to describe a horse means that—
(A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,
(B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,
(C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or
(D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,

injury to or sensitization of the horse's legs to induce artificially the highly prized gait naturally achieved through proper breeding and training.

Immediately following the show, Senator's Flower's forelegs were examined under thermovision, a diagnostic device that reads, calibrates, and records heat emissions symptomatic of irritation and inflammation. Two USDA veterinary medical officers, who independently read the thermograms, found the irregular patterns of heat emitted from the pastern areas of the forelegs to suggest the abnormal inflammation characteristic of soring. A third pair of USDA veterinarians physically examined Senator's Flower independently and concluded that the horse's painful responses were consistent with soring.[2]

The ALJ found that trainer Cantrell had shown or exhibited a sored horse in violation of 15 U.S.C. § 1824(2)(A), assessed him a civil penalty of $2,000.00, and disqualified him for one year. Owner Thornton was found to have violated 15 U.S.C. § 1824(2)(D), prohibiting a horse owner from "allowing" the showing or exhibiting of a sored horse, and was fined $2,000.00. On appeal, the Judicial Officer disqualified Thornton for one year and otherwise affirmed the ALJ's opinion in all respects.

## I. SUBSTANTIAL EVIDENCE

Respondents claim that the finding by the ALJ that the horse was sored is unsup-

ported by substantial evidence. In particular, they assert that the horse was not properly "climatized" prior to examination (a precondition to the reliability of the thermovision test) and that the veterinarians conducting the physical examination did not rule out the possibility that Senator's Flower's sensitivity was due to laminitis.

■ Our role as a reviewing court is limited. We must affirm the findings of the Secretary of Agriculture if they are supported by substantial evidence. 15 U.S.C. § 1825(b)(2); see also Fleming v. USDA, 713 F.2d 179, 188 (6th Cir.1983). Substantial evidence is:

> something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). If the ultimate findings and conclusions could reasonably have been drawn from the primary evidentiary facts we, as a reviewing court, may not "displace the . . . [Secretary's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

■ In this case, the finding that Senator's Flower was "sored" is supported by

---

and, as a result of such application, infliction, injection, use, or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving, except that such term does not include such an application, infliction, injection, use, or practice in connection with the therapeutic treatment of a horse by or under the supervision of a person licensed to practice veterinary medicine in the State in which such treatment was given.

2. Petitioners suggest that the inflammation and sensitivity was caused by the fact that the horse was suffering from mild laminitis. The farrier testified that, as therapy for the laminitis, Senator's Flower had been fitted with a

specially built rim pad designed to eliminate any pressure on the sole. The presence of this rim pad changed the horse's heel-toe ratio. The USDA measurement of the horse's heel-toe ratio indicated that the length of her toe did not exceed the height of her heel by one inch or more when measured from the ground to the hairline. Under 9 C.F.R. § 11.1(t)(2) such a ratio constitutes soring if it is achieved by the use of pads on the front feet or other artificial devices or means. Petitioners contend that evidence of illegal heel-toe ratio was improperly admitted in that it constituted misconduct not charged in the complaint. We need not consider this contention, however, as the Judicial Officer expressly stated that he gave this evidence no weight.

the substantial evidence that six veterinarians, acting independently of one another, found her to be so: two by observing her gait in the ring, two by examining the thermogram, and two upon physical examination. In addition, both the methodology and the criteria used in the several tests conducted by the USDA through these six veterinarians are clear and uniform. *Fleming v. USDA,* 713 F.2d at 186.[3]

## II. INTENT REQUIREMENT

Respondent Thornton contends that the term "allowing" in 15 U.S.C. § 1824(2)(D) requires a showing that the owner knew the horse was sore at the time it was shown. Our reading of the Horse Protection Act as a whole and its legislative history compels us to reach a contrary conclusion.

■ The Horse Protection Act was adopted to further two public purposes: the altruistic one of protecting the animals from an unnecessary and cruel practice and the economic one of eliminating unfair competition from sored pseudo-champions that could fatally damage the Tennessee walking horse industry. Horse Protection Act Amendments of 1976, H.R.Rep. No. 1174, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News 1696, 1699. The Act was intended to "make it impossible for persons to show sored horses." Horse Protection Act of 1970, H.R.Rep. No. 1597, 91st Cong., 2d Sess., *reprinted in* 1970

U.S.Code Cong. & Ad.News 4870, 4872. Weaknesses in the statutory scheme, however, left the Act ineffective. "[T]he intended effect of the law was vitiated by a combination of factors, including statutory limitations on enforcement authority, lax enforcement methods, and limited resources available to the [USDA] to carry out the law." H.R.Rep. No. 1174, *supra,* at 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 1699.

■ In 1976 the Act was significantly amended to increase its efficacy. On one front, the statutory elements of both the civil and criminal offenses were modified to create stricter standards of liability, with three changes relating to the intent requirement. First, the definition of "sore" was changed to eliminate the requirement that soring be done with the specific intent or purpose of affecting a horse's gait. *Id.* at 2, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 1696; *see* 15 U.S.C. § 1821(3). Second, a statutory presumption was created that a horse demonstrating unusual sensitivity or inflammation in both forelimbs or hindlimbs has been sored. *Id.* § 1825(d)(5). By thus changing the focus of the factual inquiry from the purpose of soring to the presence of soring, these modifications strongly indicate that Congress intended to avoid a knowledge requirement. Third, the standard of mental culpability for criminal violation was reduced from

---

**3.** Section 1825(d)(5) of the Act provides:

In any civil or criminal action to enforce this chapter or any regulation under this chapter a horse shall be presumed to be a horse which is sore if it manifests abnormal sensitivity or inflammation in both of its forelimbs or both of its hindlimbs.

Relying on *Landrum v. Block,* 40 Agric.Dec. 922 (M.D.Tenn.1981), respondents contend that the provision is constitutional only if interpreted as a "burden of going forward" in conformity with Fed.R.Evid. 301; that, in fact, it creates a virtually irrebuttable presumption because of the *de minimis* weight accorded to preshow examinations and outside experts; and that, especially in light of the severe quasi-criminal sanctions imposed, the provision raises serious fifth amendment due process concerns.

Without diminishing the importance of these issues in the abstract, we conclude that they have no bearing on this case. The opinion of the ALJ, adopted and restated verbatim by the Judicial Officer, expressly indicated that the statutory presumption was applied "in accordance with Rule 301 Federal Rules of Evidence." "[O]ne cannot attack application of a regulation on [the] ground that it is unconstitutional as applied to others." *Fleming v. USDA,* 713 F.2d 179, 188 (6th Cir.1983). Further, the ALJ found that there was "clear and persuasive evidence ... of soring in violation of the Act." As there was a sufficient factual finding of soring to find a violation even in the absence of the statutory presumption, any impermissible reliance on it cannot be deemed prejudicial.

"willful" to "knowing." H.R.Rep. No. 1174, *supra,* at 2, *reprinted in* U.S.Code Cong. & Ad.News at 1697; *see* 15 U.S.C. § 1825(a)(1). Apart from the requirement of knowledge, the elements of the criminal offense are identical to those of the civil offense. Both criminal and civil offenses are defined as commission of the acts enumerated in section 1824 of the Act,[4] but criminal liability requires *knowing* commission while civil liability requires mere commission. *Compare id.* § 1825(a)(1) *with id.* § 1825(b)(1). While the common sense meaning of "allowing" and the other verbs employed in section 1824 may be ambiguous with respect to intent, any ambiguity is clarified in sections 1825(a)(1) and 1825(b)(1). We interpret these provisions to mean that Congress intended "knowledge" to be the element distinguishing criminal from civil liability. Since the legislative history demonstrates that Congress gave careful scrutiny to the intent provisions of the Act during its revision, we conclude that the omission of an express knowledge requirement from the civil offense was deliberate and that if Congress had intended to make knowledge an element of the civil offense as well it would have stated so explicitly.

Our resolution of this issue is bolstered by other aspects of the 1976 revision, which indicate that Congress intended to soften the intent requirements not only to deter violations but also to facilitate enforcement. The legislative history reveals that USDA regulation was seriously hindered by the agency's lack of financial resources. Congress therefore increased the USDA authorization from $100,000 to $500,000 to provide funds for thermovision equipment and enforcement personnel. H.R.Rep. No. 1174, *supra,* at 4, 5–6, *reprinted in* U.S.Code Cong. & Ad.News at 1698, 1699–1700. As the facts of this case demonstrate, the USDA has used its budget to develop a sophisticated, efficient, and objective system for policing compliance with the Act on-site at horse shows. The statutory presumption and the loosened intent requirements apparently were intended to be compatible with the available clinical methods of soring diagnosis. Together with the increased budget authorization they form a package to make effective enforcement possible by policing horse shows. Were we now to read a knowledge requirement into the civil penalty provisions of the Act, we would reintroduce the difficulties of enforcement that the 1976 amendments specifically sought to correct.[5]

## III. PENALTY ENHANCEMENT

█ Relying upon the rationale of *North Carolina v. Pearce,* 395 U.S. 711, 724, 89

---

4. The prohibited forms of conduct relevant to this appeal are:

 The (A) showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore, (B) entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore, ... and (D) allowing any activity described in clause (A) [or] (B), ... respecting a horse which is sore by the owner of such horse.

 15 U.S.C. § 1824(2).

5. We are aware of the recent eighth circuit opinion in *Burton v. USDA,* 683 F.2d 280 (8th Cir.1982). The *Burton* court stated:

 Absent clear, expressed intent by Congress to hold owners of horses strictly liable for violation of the Horse Protection Act, 15 U.S.C. § 1824(2)(D), we hold that the owner cannot be held to have "allowed" a "sore" horse to be shown when the following three factors are shown to exist: (1) there is a

finding that the owner had no knowledge that the horse was in a "sore" condition, (2) there is a finding that a Designated Qualified Person examined and approved the horse before entering the ring, and (3) there was uncontradicted testimony that the owner had directed the trainer not to show a "sore" horse.

*Id.* at 283. We are inclined to agree with *Burton* that the Horse Protection Act does not impose absolute liability even when there is credited testimony that the alleged horse soring was expressly contrary to the instructions of the horse owner. In this case, however, in addition to denying that the horse was sored, Thornton contends only that he did not positively direct the trainer to sore the horse. We find this factual difference to be legally significant and the absence of a positive direction to sore to be insufficient to escape civil liability under the Act.

S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969) ("the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal ... would be ... a violation of due process of law"), respondent Thornton maintains that the Judicial Officer's enhancement of his penalty to include a one year disqualification violates his fifth amendment right to due process. He reasons that the severe sanction of disqualification is punitive rather than remedial and, because it could not have been imposed upon him had he not exercised his right of appeal, that the disqualification is actually a punishment for having appealed.

We are not persuaded by respondent's argument. To the extent that the disqualification is punitive, it is punishment for the offense of soring and not for the appeal. Under section 8(a) of the Administrative Procedure Act, 5 U.S.C. § 557(b), "On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision." As the ninth circuit recognized in *Containerfreight Transport Co. v. ICC,* 651 F.2d 668, 670 (9th Cir.1981), the review provision of the Administrative Procedure Act authorizes the agency "to decide all issues *de novo.*" The review is actually a species of retrial. The Supreme Court recognized in *North Carolina v. Pearce,* 395 U.S. at 723, 89 S.Ct. at 2079 that a judge "is not constitutionally precluded ... from imposing a new sentence, whether greater or less than the original sentence" upon such a retrial. The only constitutional limitation upon this right is that any penalty already suffered prior to retrial must be "credited" towards the subsequent sentence so that the actual penalty imposed does not exceed the maximum limits for a single commission of the offense. *Id.* at 718, 89 S.Ct. at 2077. No such constitutional violation was committed in this case. The disqualification provision is supplementary to, not an alternative for, the imposition of a fine. 15 U.S.C. § 1825(c). It was lawfully imposed by the Judicial Officer.

AFFIRMED.