**Roy E. WAGNER and Judith E. Rizio, Petitioners,**

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

No. 93–3318.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 3, 1994.

Decided March 15, 1994.

Michael L. Rozman, Nicholas & Foreman, Harrisburg, PA, for petitioners.

Jeffrey A. Knishkowy, Office of General Counsel, U.S. Dept. of Agriculture, Washington, DC, for respondent.

Before: SLOVITER, *Chief Judge*, ALITO, Circuit Judge, and PARELL, District Judge.*

## OPINION OF THE COURT

SLOVITER, Chief Judge.

### I.

Judith E. Rizio, the owner of the horse known as Sir Shaker, and Roy E. Wagner, the horse's trainer, have filed this petition for review from the administrative determination that they violated the Horse Protection Act, 15 U.S.C. § 1821 *et seq.* (1988) (the Act) by exhibiting a "sore horse."

The sole issue before us is whether the United States Department of Agriculture (USDA) met its burden of proof.

Because the Secretary's determination that Sir Shaker was sore within the meaning of the Act is supported by substantial evidence, we affirm.

---

* Hon. Mary Little Parell, United States District Judge for the District of New Jersey, sitting by designation.

When Sir Shaker was entered at the Eastern Classic Horse Show in Quentin, Pennsylvania, he underwent routine examination by two USDA veterinarians, Dr. Frances Miava Binkley and Dr. Hugh V. Hendricks. These veterinarians who, prior to the Eastern Classic, had examined 400 to 500 horses and over 2,500 horses, respectively, were charged with the duties of enforcing the Act and of monitoring the Designated Qualified Person (DQP) Thomason.[1] Dr. Binkley observed Sir Shaker respond with pain by pulling its foot away and tensing its abdomen when DQP Thomason palpated Sir Shaker's pasterns.[2]

One day after the Eastern Classic, Dr. Binkley signed an affidavit recounting her own examination of Sir Shaker:

> The DQP excused the horse and issued a DQP ticket for two foot sensitivity.
>
> I then palpated the horse. Each time I palpated the area on the front on the pasterns, 1″–2″ above the coronary band, the horse pulled its foot away. The reaction was the same on both front feet. The horse also tensed his abdomen and shoulder during palpation.
>
> .    .    .    .    .
>
> In my professional opinion, the horse was sore and this condition was caused by a caustic chemical or a mechanical device or a combination of both.

Dr. Hendricks summarized his independent examination of Sir Shaker as follows in an affidavit, also signed one day after the Eastern Classic:

> [Sir Shaker] exhibited definite pain responses when examined by the DQP and was turned down because of sensitivity in both front feet....
>
> When [I applied] light to moderate digital pressure ... to the anterior surface of both pasterns the horse would exhibit strong and definite pain responses. The horse would try and remove his foot from my grip and would jerk his head upward, there was a tightening of the abdominal muscles and a shifting of his weight back over the hind quarters when the sensitive areas were palpated.
>
> Dr. Binkley and I conferred and were in complete agreement that this horse met the criteria to be classified as a "sore horse" a[s] defined by the Horse Protection Act.

The Administrator of the Animal and Plant Health Inspection Service (APHIS) instituted disciplinary action against Wagner and Rizio pursuant to the Horse Protection Act, alleging that they violated the Act by exhibiting Sir Shaker while the horse was sore. The Administrative Law Judge held that Sir Shaker was sore at the time of exhibition in violation of the Act, found a violation as to Rizio, and assessed a $2,000 civil penalty and a one-year disqualification, but dismissed the complaint as to Wagner on the ground that Wagner had not "entered" the horse for purposes of the Act. Though Wagner and Rizio testified that Sir Shaker's conduct was caused by nervousness, the ALJ credited testimony of Drs. Binkley and Hendricks indicating that they could distinguish between pre-exhibition nervousness and pain responses. APHIS and Rizio both filed administrative appeals, and the USDA's Judicial Officer affirmed the judgment as to Rizio and modified the judgment so to assess Wagner a $2,000.00 civil penalty and one-year disqualification as well. The decision of the Judicial Officer is the final decision of the Secretary. See 7 C.F.R. § 2.35 (1993). This petition for review pursuant to 15 U.S.C. § 1825(b)(2) followed.

## II.

■ We must affirm the findings of the Secretary of Agriculture if they are supported by substantial evidence. See 15

---

1. "A DQP is employed by show management to inspect horses and determine if they are 'sore.' Management employs these individuals because it may be held liable under the Act if a 'sore' horse is shown and a DQP was not utilized." *Elliott v. Administrator, Animal & Plant Health Inspection Serv.*, 990 F.2d 140, 142 n. 4 (4th Cir.1993).

2. In layperson terminology, this means that DQP Thomason examined by touch the front of each foot directly above the hoof. See **Webster's Third New International Dictionary** 525, 1627 (1964).

U.S.C. § 1825(b)(2); *Thornton v. United States Dep't of Agriculture,* 715 F.2d 1508, 1510 (11th Cir.1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Passaic Valley Sewage Comm'rs v. United States Dep't of Labor,* 992 F.2d 474, 480 (3d Cir.1993) (quotation omitted).

■ The Horse Protection Act prohibits the "entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore." 15 U.S.C. § 1824(2)(B). A horse is sore if:

(A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,

(B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,

(C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or

(D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,

and, as a result of such application, infliction, injection, use or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving....

*Id.* § 1821(3). "[A] horse shall be presumed to be a horse which is sore if it manifests abnormal sensitivity or inflammation in both of its forelimbs or both of its hindlimbs." *Id.* § 1825(d)(5).

The testimony and affidavits of Drs. Hendricks and Binkley are substantial evidence that Sir Shaker was presumptively sore and in fact sore at the time of the Eastern Classic. Upon independent examination of Sir Shaker, both Dr. Hendricks and Dr. Binkley filed affidavits which support the finding that the horse was "sore" within the meaning of

the Act. Significantly, the veterinarians' respective affidavits, reveal that:

[t]he examining veterinarians did not simply conclude that the horses were abnormally sensitive in two limbs and, therefore, were "sore." Each veterinarian testified to the effect that the [horse] plainly experienced a high degree of pain upon palpation of [his] forelimbs, demonstrated by the horse['s] *immediate and reflexive pulling away* from the palpation, rearing up and sagging down on the hindquarters, and instinctively cinching up the abdominal muscles. The diagnosis was not based upon the [presumption attached to] mere abnormal sensitivity.... In other words, the horse[ was] "sore" within the meaning of the Act.

*Elliott,* 990 F.2d at 146.

We therefore reject petitioners' argument that the veterinarians' affidavits were not sufficiently detailed to support the finding of soreness.

■ Furthermore, we reject their contention that the ALJ improperly attached "controlling" weight to the doctors' opinions as to Sir Shaker's sore condition. Brief for Petitioner at 11.[3] The only evidence offered to discredit the doctors' findings consisted of petitioners' testimony that Sir Shaker's behavior manifested nervousness, not pain, and that Doctor Binkley startled the horse by tossing her hair. The strength of these assertions was severely diluted when the ALJ credited the testimony of Drs. Binkley and Hendricks that they could distinguish between pain responses and nervousness. In light of the record as a whole, we are satisfied that a reasonable mind would accept as adequate the evidence supporting the finding that Sir Shaker was sore. *See Passaic Valley Sewage Comm'rs,* 992 F.2d at 481.

■ We are not compelled to reach the opposite conclusion merely because the veterinarians were unable to recall the substance of their respective affidavits. In spite

---

**3.** A survey of decisions under the Act demonstrates that the testimony and affidavits of examining veterinarians, absent contrary evidence, is commonly dispositive in cases brought under the Act. *See generally Elliott,* 990 F.2d at 146; *Stamper v. Secretary of Agriculture,* 722 F.2d 1483, 1486–87 (9th Cir.1984); *Fleming v. United States Dep't of Agriculture,* 713 F.2d 179, 185–86 (6th Cir.1983); *Thornton,* 715 F.2d at 1510–11. Given the nature and subject of the Act, it is difficult to imagine an alternative method of proof in such cases.

of petitioners' protestations to the contrary, it is well settled that affidavits are a form of probative evidence. *See, e.g., Richardson v. Perales,* 402 U.S. 389, 407, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971). Though live testimony may generally be favored over affidavits because the former permits cross-examination and credibility assessment, these interests are adequately safeguarded when, as in this case, the affiant appears in court. *See id.* Though the doctors' inability to recall their respective examinations of Sir Shaker impaired petitioners' ability to cross-examine as to examination itself, this does not upset our determination that the finding of soreness is supported by substantial evidence.

Any discrepancy between the two veterinarians' affidavits does not alone suggest that the finding of soreness is not supported by substantial evidence. Each affidavit independently supports the finding of soreness; that the veterinarians arguably did not conduct identical examinations of Sir Shaker is not relevant to the weight of each which, taken together, constitute substantial evidence supporting the finding of soreness.

Finally, petitioners find it significant that Dr. Henricks originally wrote a different horse's name on the affidavit. When questioned about this on cross-examination, Dr. Hendricks explained that he immediately realized his error and corrected it. Because this is essentially a question of Dr. Hendricks' credibility, an assessment reserved for the ALJ who observed Dr. Hendricks in the courtroom, we will not attempt to review this finding on appeal.

### III.

For the foregoing reasons, we will deny the petition for review.