

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-1994

# Wagner v. Dept. of Agriculture

Precedential or Non-Precedential:

Docket 93-3318

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Wagner v. Dept. of Agriculture" (1994). *1994 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

NO. 93-3318

———————

ROY E. WAGNER and JUDITH E. RIZIO,

Petitioners

v.

DEPARTMENT OF AGRICULTURE,

Respondent

———————

On Petition for Review of an Order
of the United States Department of Agriculture
(HPA Docket No. 91-58)

———————

Submitted Under Third Circuit LAR 34.1(a)
March 3, 1994

Before:  SLOVITER, Chief Judge, ALITO, Circuit Judge,
and PARELL, District Judge[1]

(Opinion filed March 15, 1994)

———————

Michael L. Rozman
Nicholas & Foreman
Harrisburg, PA 17110

        Counsel for Petitioners

Jeffrey A. Knishkowy
Office of General Counsel
United States Department of Agriculture
Washington, DC  20250

        Counsel for Respondent

—————————

[1]Hon. Mary Little Parell, United States District Court for the
District of New Jersey, sitting by designation.

OPINION OF THE COURT

SLOVITER, Chief Judge.

I.

Judith E. Rizio, the owner of the horse known as Sir Shaker, and Roy E. Wagner, the horse's trainer, have filed this petition for review from the administrative determination that they violated the Horse Protection Act, 15 U.S.C. § 1821 et seq. (1988) (the Act) by exhibiting a "sore horse."

The sole issue before us is whether the United States Department of Agriculture (USDA) met its burden of proof.

Because the Secretary's determination that Sir Shaker was sore within the meaning of the Act is supported by substantial evidence, we affirm.

When Sir Shaker was entered at the Eastern Classic Horse Show in Quentin, Pennsylvania, he underwent routine examination by two USDA veterinarians, Dr. Frances Miava Binkley and Dr. Hugh V. Hendricks. These veterinarians who, prior to the Eastern Classic, had examined 400 to 500 horses and over 2,500 horses, respectively, were charged with the duties of enforcing the Act and of monitoring the Designated Qualified Person (DQP) Thomason.[2]  Dr. Binkley observed Sir Shaker respond with pain by

---

[2]"A DQP is employed by show management to inspect horses and determine if they are 'sore.'  Management employs these individuals because it may be held liable under the Act if a 'sore' horse is shown and a DQP was not utilized." Elliott v. Administrator, Animal & Plant Health Inspection Serv., 990 F.2d 140, 142 n.4 (4th Cir. 1993).

pulling its foot away and tensing its abdomen when DQP Thomason

palpated Sir Shaker's pasterns.[3]

One day after the Eastern Classic, Dr. Binkley signed

an affidavit recounting her own examination of Sir Shaker:

> The DQP excused the horse and issued a DQP
> ticket for two foot sensitivity.
>
> I then palpated the horse.  Each time I palpated the
> area on the front on the pasterns, 1"-2" above the
> coronary band, the horse pulled its foot away. The
> reaction was the same on both front feet.  The horse
> also tensed his abdomen and shoulder during palpation.
>
>     . . .
>
> In my professional opinion, the horse was
> sore and this condition was caused by a
> caustic chemical or a mechanical device or a
> combination of both.

Dr. Hendricks summarized his independent examination of

Sir Shaker as follows in an affidavit, also signed one day after

the Eastern Classic:

> [Sir Shaker] exhibited definite pain
> responses when examined by the DQP and was
> turned down because of sensitivity in both
> front feet . . . .
>
>     When [I applied] light to moderate
> digital pressure . . . to the anterior
> surface of both pasterns the horse would
> exhibit strong and definite pain responses.
> The horse would try and remove his foot from
> my grip and would jerk his head upward, there
> was a tightening of the abdominal muscles and
> a shifting of his weight back over the hind
> quarters when the sensitive areas were
> palpated.

---

[3]In layperson terminology, this means that DQP Thomason examined by touch the front of each foot directly above the hoof. See **Webster's Third New International Dictionary** 525, 1627 (1964).

> Dr. Binkley and I conferred and were in complete agreement that this horse met the criteria to be classified as a "sore horse" a[s] defined by the Horse Protection Act.

The Administrator of the Animal and Plant Health Inspection Service (APHIS) instituted disciplinary action against Wagner and Rizio pursuant to the Horse Protection Act, alleging that they violated the Act by exhibiting Sir Shaker while the horse was sore. The Administrative Law Judge held that Sir Shaker was sore at the time of exhibition in violation of the Act, found a violation as to Rizio, and assessed a $2,000 civil penalty and a one-year disqualification, but dismissed the complaint as to Wagner on the ground that Wagner had not "entered" the horse for purposes of the Act. Though Wagner and Rizio testified that Sir Shaker's conduct was caused by nervousness, the ALJ credited testimony of Drs. Binkley and Hendricks indicating that they could distinguish between pre-exhibition nervousness and pain responses. APHIS and Rizio both filed administrative appeals, and the USDA's Judicial Officer affirmed the judgment as to Rizio and modified the judgment so to assess Wagner a $2,000.00 civil penalty and one-year disqualification as well. The decision of the Judicial Officer is the final decision of the Secretary. See 7 C.F.R. § 2.35 (1993). This petition for review pursuant to 15 U.S.C. §1825(b)(2) followed.

II.

We must affirm the findings of the Secretary of Agriculture if they are supported by substantial evidence.  See 15 U.S.C. § 1825(b)(2); Thornton v. United States Dep't of Agriculture, 715 F.2d 1508, 1510 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Passaic Valley Sewage Comm'rs v. United States Dep't of Labor, 992 F.2d 474, 480 (3d Cir. 1993) (quotation omitted).

The Horse Protection Act prohibits the "entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore."  15 U.S.C. § 1824(2)(B).  A horse is sore if:

> (A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,
>
> (B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,
>
> (C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or
>
> (D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,
>
> and, as a result of such application, infliction, injection, use or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving . . . .

Id. § 1821(3).  "[A] horse shall be presumed to be a horse which is sore if it manifests abnormal sensitivity or inflammation in

both of its forelimbs or both of its hindlimbs."  Id. §1825(d)(5).

The testimony and affidavits of Drs. Hendricks and Binkley are substantial evidence that Sir Shaker was presumptively sore and in fact sore at the time of the Eastern Classic.  Upon independent examination of Sir Shaker, both Dr. Hendricks and Dr. Binkley filed affidavits which support the finding that the horse was "sore" within the meaning of the Act. Significantly, the veterinarians' respective affidavits, reveal that:

> [t]he examining veterinarians did not simply conclude that the horses were abnormally sensitive in two limbs and, therefore, were "sore."  Each veterinarian testified to the effect that the [horse] plainly experienced a high degree of pain upon palpation of [his] forelimbs, demonstrated by the horse['s] immediate and reflexive pulling away from the palpation, rearing up and sagging down on the hindquarters, and instinctively cinching up the abdominal muscles.  The diagnosis was not based upon the [presumption attached to] mere abnormal sensitivity. . . .  In other words, the horse[ was] "sore" within the meaning of the Act.

Elliott, 990 F.2d at 146.

We therefore reject petitioners' argument that the veterinarians' affidavits were not sufficiently detailed to support the finding of soreness.

Furthermore, we reject their contention that the ALJ improperly attached "controlling" weight to the doctors' opinions

as to Sir Shaker's sore condition.  Brief for Petitioner at 11.[4]
The only evidence offered to discredit the doctors' findings
consisted of petitioners' testimony that Sir Shaker's behavior
manifested nervousness, not pain, and that Doctor Binkley
startled the horse by tossing her hair.  The strength of these
assertions was severely diluted when the ALJ credited the
testimony of Drs. Binkley and Hendricks that they could
distinguish between pain responses and nervousness.  In light of
the record as a whole, we are satisfied that a reasonable mind
would accept as adequate the evidence supporting the finding that
Sir Shaker was sore.  See Passaic Valley Sewage Comm'rs, 992 F.2d
at 481.

We are not compelled to reach the opposite conclusion
merely because the veterinarians were unable to recall the
substance of their respective affidavits.  In spite of
petitioners' protestations to the contrary, it is well settled
that affidavits are a form of probative evidence.  See, e.g.,
Richardson v. Perales, 402 U.S. 389, 407 (1971).  Though live
testimony may generally be favored over affidavits because the
former permits cross-examination and credibility assessment,
these interests are adequately safeguarded when, as in this case,

---

[4] A survey of decisions under the Act demonstrates that the
testimony and affidavits of examining veterinarians, absent
contrary evidence, is commonly dispositive in cases brought under
the Act.  See generally Elliott, 990 F.2d. at 146; Stamper v.
Secretary of Agriculture, 722 F.2d 1483, 1486-87 (9th Cir. 1984);
Fleming v. United States Dep't of Agriculture, 713 F.2d 179,
185-86 (6th Cir. 1983); Thornton, 715 F.2d at 1510-11.  Given the
nature and subject of the Act, it is difficult to imagine an
alternative method of proof in such cases.

the affiant appears in court.  <u>See</u> <u>id.</u>  Though the doctors'
inability to recall their respective examinations of Sir Shaker
impaired petitioners' ability to cross-examine as to examination
itself, this does not upset our determination that the finding of
soreness is supported by substantial evidence.

Any discrepancy between the two veterinarians'
affidavits does not alone suggest that the finding of soreness is
not supported by substantial evidence.  Each affidavit
independently supports the finding of soreness; that the
veterinarians arguably did not conduct identical examinations of
Sir Shaker is not relevant to the weight of each which, taken
together, constitute substantial evidence supporting the finding
of soreness.

Finally, petitioners find it significant that Dr.
Henricks originally wrote a different horse's name on the
affidavit.  When questioned about this on cross-examination, Dr.
Hendricks explained that he immediately realized his error and
corrected it.  Because this is essentially a question of Dr.
Hendricks' credibility, an assessment reserved for the ALJ who
observed Dr. Hendricks in the courtroom, we will not attempt to
review this finding on appeal.

III.

For the foregoing reasons, we will deny the petition
for review.