United States Court of Appeals,

Fifth Circuit.

No. 94-40818.

Bill YOUNG and Floyd Sherman, Petitioners,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

June 7, 1995.

Petition for Review of an Order of United States Department of Agriculture.

Before REAVLEY and EMILIO M. GARZA, Circuit Judges, and PRADO[*], District Judge.

REAVLEY, Circuit Judge:

Bill Young and Floyd Sherman petition for review of a decision and order of the United States Department of Agriculture concluding that they entered or allowed entry of a "sored" Tennessee Walking horse in a show in violation of the Horse Protection Act.

BACKGROUND

The Horse Protection Act of 1970 (the "HPA"), 15 U.S.C. § 1821 et seq., prohibits the practice of "soring" the legs of a Tennessee Walking horse through the use of chemicals or mechanical devices. Soring causes the horse to step more quickly and extend his legs farther, enhancing the type of gait prized in a Walking horse. The HPA prohibits the entry into exhibitions, or the "allowing" of entry of any horse that is sore and provides civil and criminal penalties. 15 U.S.C. § 1824(2)(A)-(D), § 1825. The HPA defines

_____

[*]District Judge of the Western District of Texas, sitting by designation.

1

"sore" as the following:

> (3) [t]he term "sore" when used to describe a horse means that—
>
> > (A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,
> >
> > (B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,
> >
> > (C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or
> >
> > (D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,
>
> and, as a result of such application, infliction, injection, use, or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting or otherwise moving....

15 U.S.C. § 1821.

The United States Department of Agriculture (the "USDA") implements the HPA. Designated Qualified Persons ("DQPs"), employed by the USDA, examine horses to determine if they are fit for exhibition at a show. The USDA also employs veterinarians called Veterinary Medical Officers ("VMOs") to oversee the DQPs and examine some horses.

Floyd Sherman owned and Bill Young trained a horse named "A Mark for Me." During the pre-show inspection at the Tennessee Walking Horse National Celebration on August 31, 1990 a DQP rejected "A Mark for Me." At this time the USDA's sole technique for determining whether a horse was sore in violation of the HPA was digital palpation (digital palpation consists of pressing the ball of the thumb into the horse's forelimbs to test for pain).

2

The DQP testified that "A Mark for Me" did not show a strong reaction to palpation but that in 1990 the standard for prohibiting a horse from showing was "just about any movement." The DQP testified that while "A Mark for Me" exhibited "sensitivity," he did not believe the horse to be sore. Two VMOs immediately examined the horse and concluded that in their opinion the horse was sore. "A Mark for Me" was disqualified and the USDA filed a complaint against Young and Sherman under the HPA.

An Administrative Law Judge ("ALJ") dismissed the complaint, finding that an encounter with another horse en route to the pre-show inspection area caused the horse to be highly agitated and explained its reaction to palpation. The USDA appealed to a Judicial Officer ("JO") who reversed. The JO ordered Young and Sherman each to pay a civil penalty of $2000 and disqualified Young and Sherman for one year from the exhibition of horses. Sherman and Young appeal. We reverse.

DISCUSSION

Sherman and Young contend that the USDA's decision that they sored "A Mark for Me" was not supported by substantial evidence. The JO's conclusion was based almost solely on the affidavits of the two VMOs and a USDA form entitled "Summary of Alleged Violations" filled out by the two VMOs after their inspection of "A Mark for Me" at the show. The two USDA VMOs recorded their observations of "A Mark for Me" on the summary report the night of the inspection and in individual affidavits completed the next day. These documents indicated that the VMOs concluded that "A Mark for

3

Me" was sore because the horse experienced pain when its hoof areas were palpated.  The VMOs testified before the ALJ regarding their conclusions.  Their testimony was based on their general practices regarding this type of inspection.  Neither VMO had any independent memory regarding their inspection of "A Mark for Me."

Sherman and Young contend that these documents do not constitute substantial evidence because they are unreliable hearsay.  They essentially contend that the documents are unreliable because:  1) they were created with a bias towards the Government's position;  and 2) the conclusions reached in them are based on an unreliable method of determining whether a horse has been sored.

The Horse Protection Act states that the "findings of the Secretary shall be set aside if found to be unsupported by substantial evidence."  15 U.S.C. § 1825(b)(2).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 476-78, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951).  This court has held that in determining whether hearsay can constitute substantial evidence "we must look to those factors which "assure underlying reliability and probative value' ... to determine whether the hearsay in the present case constitutes substantial evidence."  *School Bd. v. H.E.W.,* 525 F.2d 900, 906 (5th Cir.1976) (citing *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971)).

There is significant evidence in the record indicating that

4

the evidence relied on by the JO and the USDA to support a finding of soreness is lacking in probative value and reliability. *See Universal Camera Corp.,* 340 U.S. at 488, 71 S.Ct. at 464 (holding that in determining whether an administrative order is based on substantial evidence, the reviewing court must consider "whatever in the record fairly detracts from [the] weight" of the evidence). The VMO's testimony in this case revealed that as a general practice VMOs prepare summary reports and affidavits only when administrative proceedings are anticipated. *See Palmer v. Hoffman,* 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163 (1943) (holding that an accident report prepared by a railroad did not carry the indicia of reliability of a routine business record because it was prepared at least partially in anticipation of litigation); *United States v. Stone,* 604 F.2d 922, 925-26 (5th Cir.1979) (holding that an affidavit prepared by an official of the United States Treasury Department was unreliable because it was prepared in anticipation of litigation). More important, the VMOs admitted that they only included observations indicating that a horse was sore and did not include evidence indicating that a horse was not sore. The VMOs also indicated that they were given instructions regarding how to prepare the documents by USDA attorneys so that the documents would support a USDA complaint under the HPA. Thus, although the authors of the documents may have been objective in forming their opinion (as the JO found), the documents themselves admittedly recorded a biased account of the results of the inspection. We conclude that their probative value is limited.

5

The reliability of the veterinarians' conclusions recorded in the hearsay documents, based almost exclusively on the results of digital palpation, are also called into question by significant evidence presented at the hearing supporting the conclusion that an observed reaction to digital palpation alone is not a reliable indicator of a sore horse. Several highly qualified expert witnesses for the petitioners testified that soring could not be diagnosed through palpation alone. Petitioners also offered a written protocol signed by a group of prominent veterinarians coming to the same conclusion. The JO's basis for rejecting this evidence seems to be simply that it is contrary to the agency's policies and the agency's prior decisions.[1] The JO does not point to scientific or medical data supporting the agency's chosen diagnostic technique. *See Veal v. Bowen,* 833 F.2d 693, 699 (7th Cir.1987) (holding that "[w]here diagnoses are not supported by medically acceptable clinical and laboratory diagnostic techniques, this court need not accord such diagnoses great weight").

Petitioners also point out that Congress noted its disapproval, in an appropriation bill, of soring diagnoses based

---

[1]The JO pointed out that the experts' testimony and the protocol stated that factors other than a negative response to palpation must be observed before a sore diagnosis can be made. He concludes that these other factors would require the examiner to look for signs such as redness, swelling, heat or interference with function which the JO contends would amount to a rewriting of the HPA by requiring symptoms of soring other than a reasonable expectation of pain. The expert testimony and protocol indicate that the other observations should be made in order to determine whether the horse has propensity for pain and are indicia of pain or repercussions of pain as well as additional symptoms of soring.

solely on palpations. *See* Pub.L. No. 102-341, 106 Stat. 873, 881-882 (1992); *see also* H.R.Rep. No. 617, 102d Cong., 2d Sess. 48 (1992); S.Rep. No. 334, 102d Cong.2d Sess. 49 (1992). Congress' new dictates do not retroactively bind an ALJ or a JO, but they do support a conclusion that a diagnoses based solely on palpation and recorded only in documents constituting hearsay where no significant cross-examination can be done do not constitute reliable evidence.[2]

It is important to note that in reviewing an administrative decision, this court must look to the evidence in "the record considered as a whole, not just evidence supporting the [agency's] findings." *N.L.R.B. v. Pinkston-Hollar Constr. Serv., Inc.,* 954 F.2d 306, 309 (5th Cir.1992) (citation omitted). In this case the petitioners also presented substantial evidence indicating that the horse was not sore.[3] The petitioners offered the testimony of two

___

[2]In a recent opinion, the D.C. Circuit rejected the argument that palpation alone is not an accurate diagnostic technique, and that therefore, summary reports by USDA VMOs do not constitute substantial evidence. *Crawford v. Dept. of Agriculture,* 50 F.3d 46 (D.C.Cir.1995). That court noted that the fact that horse owners subsequently succeeded in convincing Congress that digital palpation is unreliable is not relevant to the question of whether the USDA appropriately relied on palpation as a technique in the past. In the present case, however, the petitioners also offer medical evidence—expert testimony and a written protocol—to support the conclusion that digital palpation is not a reliable diagnostic technique.

[3]In cases rejecting the appeals of trainers and owners contesting a soreness finding on the grounds that VMO affidavits and summary reports cannot constitute substantial evidence, both the Third and Sixth Circuits found it important that the petitioners in the cases before them presented no counter-evidence, aside from the petitioner's own testimony, showing that the horse in question was not sore. *Gray v. U.S.D.A.,* 39 F.3d 670, 676 (6th Cir.1994); *Wagner v. Dept. of*

7

private veterinarians and one off-duty DQP who examined "A Mark for Me" immediately after inspection by the VMOs. All three testified that they did not find soring.[4] Indeed, the testimony of the Government's DQP that he did not believe the horse to be sore also supports the conclusion that the horse was not sore.

In cases where the Secretary of an agency does not accept the findings of the ALJ, this court " "has an obligation to examine the evidence and findings of the [JO] more critically than it would if the [JO] and the ALJ were in agreement.' " *Pinkston-Hollar Const. Services, Inc.,* 954 F.2d at 309-310 (citation omitted); *Garcia v. Secretary of Labor,* 10 F.3d 276, 280 (5th Cir.1993) (stating that "[a]lthough this heightened scrutiny does not alter the substantial evidence standard of review, it does require us to apply it with a particularly keen eye, especially when credibility determinations are in issue....). The ALJ specifically found petitioners' witnesses' testimony to be more credible than the VMOs' testimony as reported in the summary report and affidavits. The JO made the opposite credibility determination essentially because he concluded that the private veterinarians could not be unbiased since their livelihoods' depended on their being in horse owners' good favor. If this rationale were accepted, a trainer or owner would never be

_____

*Agriculture,* 28 F.3d 279, 282-83 (3d Cir.1994).

[4]The JO discounts this testimony stating that there is a possibility that an anesthetic had been applied to the horse's leg before the examination. His basis for this conclusion is pure speculation. There is no evidence in the record indicating that an anesthetic was used and the JO even admits that the evidence shows that it would be difficult for one to have been applied out of public sight.

able to counter a Government veterinarian's conclusion with the conclusion of a private veterinarian because private practitioners will always be dependent, in some way, on horse owners. We therefore reject the JO's basis for finding the petitioners' witnesses lacking in credibility.

The question regarding the credibility of the Government's witnesses is not whether their testimony on the stand should be found credible, because they could not testify as to whether "A Mark for Me" was sore at that time. Both VMOs admitted that they did not have a current recollection of the inspection. The question is whether the documentary evidence of soreness presented by the Government was credible. We hold that in light of the significant evidence calling into question the probative value and reliability of that documentary evidence where we are required to apply stricter scrutiny to the JO's conclusions which contradict the ALJ and in light of the substantial counter-evidence indicating that the horse was not sore, the JO's determination was not supported by substantial evidence and his decision should be reversed and judgment should be rendered in favor of Young and Sherman.[5]

REVERSED AND RENDERED.

EMILIO M. GARZA, Circuit Judge, dissenting:

The only question before us is not whether "A Mark for Me" was

---

[5]Sherman also argued that even if the finding that the horse was sore is correct, he should not be found liable without a showing that he knew that the horse was sore. Our determination with respect to the soreness finding makes it unnecessary for us to address this issue.

9

in fact sore, but whether there is substantial evidence to support the USDA's decision that the horse was sore.  Based on the two VMO's "objective" opinions, *see* maj. op. at 6 (acknowledging objectivity of VMOs), I would hold that there is substantial evidence,[1] and, accordingly, I respectfully dissent.

---

[1]*See Crawford v. U.S. Dep't of Agriculture,* 50 F.3d 46 (D.C.Cir.1995) (noting that the relevant standard was the law at the time of the events at issue, and holding that "we have no legitimate basis to reject digital palpation as a diagnostic technique, whether used alone or not, prior to the passage of the [new law]" that rejected digital palpation as a sole diagnostic method).