**F. Dale ROWLAND; Denise Rowland, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

No. 93–4033.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1994.

Decided Jan. 13, 1995.

David N. Patterson (argued and briefed), Patterson & Bleiweiss, Willoughby, OH, for petitioners.

M. Bradley Flynn (argued and briefed), U.S. Dept. of Agriculture, Office of Gen. Counsel, Washington, DC, for respondent.

Before: NELSON, SUHRHEINRICH, and SILER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

F. Dale Rowland and Denise Rowland seek review of a final order of the Secretary, United States Department of Agriculture (USDA), which held that they violated the Horse Protection Act, 15 U.S.C. § 1825, because they owned and Denise Rowland entered a "sore" horse in the Greenback Classic Horse Show in Randolph, Ohio, on June 22, 1991.

We hold that the factual findings are not clearly erroneous, and that the Secretary's interpretation of the pertinent regulation promulgated under the Act is neither arbitrary nor capricious. Therefore, we **DENY** the petition for review of the Secretary's order.

## I.

The relevant facts in this case arose after "Quarterback Stock," a champion Tennessee Walking Horse, was entered in the Greenback Classic Horse Show. Before the horse was admitted into the exhibition ring, the Designated Qualified Person ("DQP"), inspected the horse to detect whether it had been sored. Soring occurs when an injury to or sensitization of a horse's legs, rather than training and breeding, is used to induce the high stepping gait for which Tennessee Walkers are known. *Thornton v. United States Dep't of Agric.*, 715 F.2d 1508, 1510 (11th Cir.1983). The DQP is hired by show management to inspect horses because management is potentially liable if a sore horse is allowed to participate and a DQP is not utilized. 15 U.S.C. § 1824(3); 9 C.F.R.

§ 11.7; *Elliott v. Administrator, Animal & Plant Health Inspection Serv.*, 990 F.2d 140, 142 n. 4 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 191, 126 L.Ed.2d 149 (1993). The DQP passed the horse.

Here, however, prior to showing, two USDA veterinarians, posted to monitor compliance with the statute, observed the horse and disagreed with the DQP's assessment. Dr. Gwen Lee discovered "obvious scarring-front fetlock" on Quarterback Stock. The second USDA veterinarian inspected the horse and likewise described the horse as "scarred on the front fetlocks." Consequently, the two USDA veterinarians concluded that the horse was "sore" within the meaning of the Scar Rule. 9 C.F.R. § 11.3.

The Administrator of the Animal and Plant Health Inspection Service, the division of the USDA charged with enforcing the Horse Protection Act, issued a complaint against the Rowlands. After a disciplinary administrative proceeding under the Act, an administrative law judge ("ALJ") dismissed the complaint. The ALJ found that the horse "had bilateral scars indicative of soring" which were encompassed within the prohibitions contained in the Scar Rule; however, he held that because the scars "were as fully healed as possible," the horse was "restored to satisfactory condition" and not subject to the Act.

The government appealed to the Judicial Officer ("JO"), who serves as the delegate of the Secretary of Agriculture for judicial matters, 7 C.F.R. § 2.35, and has final administrative authority to decide the Department's cases subject to 5 U.S.C. §§ 556, 557. The JO affirmed the ALJ's factual findings, but disagreed with his interpretation of the Scar Rule. Therefore, the JO reversed the order of dismissal, assessed a civil penalty of $2,000 and disqualified the Rowlands "for 1 year from showing, exhibiting, or entering any horse, directly or indirectly through any agent, employee, or other device, and from judging, managing, or otherwise participating in any horse show, horse exhibition, horse sale or auction." The decision of the JO became the final decision of the Secretary.

## II.

The Horse Protection Act states that the Secretary's findings will be set aside only if "unsupported by substantial evidence." 15 U.S.C. § 1825(b)(2). When "an administrative agency disagrees with the conclusions of its ALJ, the standard does not change; the ALJ's findings are simply part of the record to be weighed against other evidence supporting the agency." *Stamper v. Secretary of Agric.*, 722 F.2d 1483, 1486 (9th Cir.1984) (citing *Saavedra v. Donovan*, 700 F.2d 496, 498 (9th Cir.1983)). More weight is given to the ALJ's findings when the issue of credibility is based on witness demeanor. *Id.* We defer to the agency and not the ALJ, however, in the matter of derivative inferences. *Id.*

If substantial evidence supports the Secretary's decision and the proper legal standards were employed, we must affirm his decision. *Fleming v. United States Dep't of Agric.*, 713 F.2d 179, 188 (6th Cir.1983).

## III.

Section 1824(2) prohibits showing a "sore" horse.[1] To establish a violation by the Rowlands, the government bore the burden of showing by a preponderance of the evidence, that the Rowlands owned Quarterback Stock, that the horse had been entered in a show, that the horse was sore at the time of entry, and that the Rowlands allowed the entry. *See Baird v. United States Dep't of Agric.*, 39 F.3d 131, 137 (6th Cir.1994) (addressing the meaning of the term "allow").

---

1. The term "sore" when used to describe a horse means that—(A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse, (B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse, (C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or (D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse, and, as a result of such application, infliction, injection, use, or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving.... 15 U.S.C. § 1821(3).

The only element in question is whether the horse was sore at the time of its entry into the Greenback Classic.

The Rowlands challenge the finding that the horse was sore within the meaning of the Act, contesting the factual findings and the interpretation of the regulation upon which the violation turns. That regulation, known as the Scar Rule, was promulgated pursuant to Section 9 of the Act which authorizes the Secretary to "issue such rules and regulations as he deems necessary to carry out the provisions of this chapter." 15 U.S.C. § 1828.

The Scar Rule, which applies to all horses born after October 1975, provides in part, that to show a horse, "[t]he anterior and anterior-lateral surfaces of the fore pasterns (extensor surface) must be free of bilateral granulomas, other bilateral pathological evidence of inflammation, and, other bilateral evidence of abuse indicative of soring including, but not limited to, excessive loss of hair." 9 C.F.R. § 11.3 (footnote omitted). Under the rule, any horse that does not meet the criteria is deemed "sore" under the Act.

### A.

■ Rowlands contend that the record evidence fails to support the existence of soreness because the scars on Quarterback Stock were not located in the horse's pasterns, that area above the coronary band and below the fetlock joint. We disagree.

Although the testimony regarding the precise size, shape, appearance and location of the scars varied, there was sufficient evidence to support the finding that scarring was present in the pastern area. Both USDA veterinarians' notes referred to bilateral raised hairless scars in the fetlocks; however, both adequately explained the meaning of their notes. Those explanations indicated that the scarring occurred in the pastern area, thus implicating the Act. Dr. Lee testified that her notes meant that the soreness was "at the top of the pastern joint ... towards the fetlock area." Dr. Binkley testified that her notes referred to the fetlocks to "remind [her] these [scars] were slightly unusual, they were near the fetlocks, because they were slightly different than some other ones that [she] would normally see."

The ALJ credited the testimony of the veterinarians as did the JO, commenting on the brief time lapse between the examination and the documentation and the consistency of findings by the two veterinarians. We are obliged to give weight to the ALJ's findings regarding credibility of witnesses. Hence, these findings are not clearly erroneous, and petitioners do not prevail on this argument.

### B.

■ After the ALJ made his finding regarding soring, he noted that the "scars were fully healed" on the entry date. There is no dispute that the horse exhibited no sensitivity to palpation despite the existence of sufficient evidence establishing that the scars were caused by soring. Both USDA veterinarians testified that the scars were caused, in all likelihood, by "chronic insult" to the skin, because the raised scars they detected indicate a "healing defense" to a repeated injury as opposed to a one-time accident.

Nevertheless, after the ALJ found that the scars were healed, he concluded that the Scar Rule did not prohibit entry of Quarterback Stock into the show because the horse was "restored to a satisfactory condition" as contemplated by the USDA. In reaching this conclusion, the ALJ relied on statements published in the Federal Register in response to comments sent to the USDA following the proposal of the regulation. The USDA's response to a comment criticizing and calling for the elimination of the Scar Rule's "once sore—always sore" presumption, first noted that the scar rule applies only to horses trained after the prohibitions contained in the Horse Protection Act of 1970 became law; thus, the horses encompassed by the rule should be scar free. 44 Fed.Reg. 25176 (1979). Additionally, the USDA stated that it was conceivable that "a scarred horse could be restored to a satisfactory condition with proper care, rest, and time." *Id.*

The JO disagreed with the ALJ's conclusion that *no* violation existed at the time of

entry because Quarterback Stock's scars had been healed. The JO relied on the unambiguous language of the rule itself to reach his conclusion. The Scar Rule plainly states that "all" horses that fail to meet the criteria shall be considered "sore." [2] The rule explicitly requires the pasterns of a horse be free from "bilateral evidence of abuse ... including ... *excessive loss of hair.*" 9 C.F.R. § 11.3 (emphasis added). Accordingly, the JO reasoned that there is no leeway for the ALJ's interpretation that *not all* horses that fail to meet the criteria are to be considered "sore." We agree.

Even if we were to consider the rule in light of the USDA's comments during promulgation, there is no basis upon which the Secretary's decision could be considered "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (standard of review of agency interpretation of its rules and regulations). The JO interpreted the statement that "a scarred horse could be restored to a satisfactory condition with proper care, rest, and time" to mean that it is conceivable that a scar that initially failed to meet the criteria listed in the Scar Rule no longer failed to meet the criteria. We find this interpretation to be reasonable.

Moreover, the plain meaning of the term "restore" contradicts the conclusion drawn by the ALJ. The word, as defined in Webster's Third International Dictionary, means "to put back in an original state." Quarterback Stock still had no hair in its pastern areas. Therefore, the horse was not restored.

Finally, we note that the Act prohibits soring not only to prevent pain to the animals, but also to prevent owners who allow trainers to sore their horses from gaining an unfair competitive advantage over trainers who relied on skill and patience. *Elliott,* 990 F.2d at 144. If we allow scarred horses to compete because they are no longer in pain, we eventually reward trainers who sore their horses. This result ignores the dual purpose for which Congress enacted this law. Both the language of the Scar Rule and the purpose for which the horse protection law was passed support our finding that the JO's interpretation of the Act is neither arbitrary nor capricious.

Because we hold that substantial evidence supported the finding that Quarterback Stock was sore as defined by the Scar Rule at the time of entry in the Greenback Classic and that the JO's interpretation of the Scar Rule is not contrary to the statute, the Rowlands' petition for review is **DENIED.**

---

**2.** The propriety of the presumption created by the Scar Rule is not argued on appeal.