57 F.3d 1070
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Judy MARTIN, Steve Wilson, and Pat Wilson, Petitioners,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.
 No. 94-3394.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1995.
 
 Before BOGGS and BATCHELDER, Circuit Judges, and ALDRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Judy Martin, a horse trainer, and Pat and Steve Wilson, owners of the horse "Pride's Dixie Queen," appeal from the decision of the USDA's Judicial Officer that they violated the Horse Protection Act by attempting to show Pride's Dixie Queen when she was sore. We find that the conclusion that Pride's Dixie Queen was sore through artificial means is not supported by substantial evidence, and we reverse.
 
 
 2
 * Under the Horse Protection Act, 15 U.S.C. Secs. 1821-1831, showing a Tennessee Walking Horse that has been sored is prohibited. Section 1824(1) prohibits the "shipping, transporting, moving, delivering, or receiving of any horse which is sore with reason to believe that such horse while it is sore may be shown...." Section 1824(2) prohibits the "showing or exhibiting ... of any horse which is sore."[1] Section 1821(3) defines "sore" to mean that
 
 
 3
 (A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,
 
 
 4
 (B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,
 
 
 5
 (C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or
 
 
 6
 (D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,
 
 
 7
 and as a result of such application, infliction, injection, use or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress....
 
 
 8
 Under Sec. 1825(d)(5) "a horse shall be presumed to be a horse which is sore if it manifests abnormal sensitivity or inflammation in both of its forelimbs or both of its hindlimbs." Nevertheless, "the presumption is rebuttable. While it imposes on the party against whom it is directed the burden of producing evidence to me[e]t or rebut the presumption, the burden of proof remains with the [Secretary] and never shifts to the Respondent." In re Martin, 53 Agric.Dec. 212 (1994), 1994 WL 102618 (U.S.D.A.) (citing Landrum v. Block, 40 Agric.Dec. 922 (1981), 1981 WL 31848 (U.S.D.A.)). "[D]ue process forbids the presumption of section 1825(d)(5) from shifting the burden of persuasion to defendants.... Due process does not require the Court to strike the presumption altogether, however, because the presumption may constitutionally shift the burden of going forward with the evidence ... once the Secretary has introduced evidence of abnormal sensitivity...." Landrum, 1981 WL 31848 at * 4 (citing Sandstrom v. Montana, 442 U.S. 510 (1979)). Furthermore, no person can be penalized or disqualified under the Act without first obtaining notice and a hearing before the Secretary of Agriculture. 15 U.S.C. Secs. 1825(b)(1), 1825(c).
 
 II
 
 9
 Pride's Dixie Queen had been afflicted with a fungus in her feet, diagnosed by Dr. Randy Baker in February 1989. Following the doctor's instructions, Martin, the horse's trainer, treated the horse twice daily with several medications for the next five to six weeks. After treatment, the horse no longer exhibited visible signs of the fungus. However, about June 1, the fungus reappeared, and the doctor advised Martin to resume treatment. Martin continued to treat the horse through September 3, the day after the show at issue in this case, and testified that on September 12 or 13, signs of the fungus reappeared. When interviewed by the USDA in December, Martin stated the horse was currently suffering from "a fungus on both of the front pasterns."
 
 
 10
 On September 2, 1989, Martin and the Wilsons entered Pride's Dixie Queen in the Tennessee Walking Horse National Celebration, in Shelbyville, Tennessee. A Designated Qualified Person (DQP), Charles Thomas, palpated the horse's front pasterns, or forelegs, to examine the horse for soreness before the show. Horse shows employ DQPs to inspect for sore horses, because the show can be held liable under the Horse Protection Act if it allows a sore horse to be shown without employing a DQP to inspect horses before the show. 15 U.S.C. Secs. 1823(c), 1824(3). Palpation means to apply pressure to the horse's pasterns with the thumb to see if the horse experiences pain.
 
 
 11
 Noting that both of the horse's front feet were sensitive, Thomas disqualified Pride's Dixie Queen. The show's policy was to disqualify any horse that exhibited any kind of movement in its forelimbs upon palpation of its front feet. However, Thomas did not think that the horse was "sore" as defined under the Horse Protection Act.
 
 
 12
 Pride's Dixie Queen was then examined by two USDA veterinarians assigned to the show to monitor compliance with the Horse Protection Act. Dr. Riggins examined the horse first. He reported a mild pain response from palpation of the horse's front feet, and a stronger reaction from the right front foot than from the left foot. He did not see any evidence of fungal infection in the feet. At the hearing, Dr. Riggins speculated that for a fungus to cause this pain response, the fungus would have to be visible, but he admitted that he did not know whether this opinion was true or not.
 
 
 13
 After Dr. Riggins's examination, Dr. Allen Knowles examined the horse. His report from the examination indicated that he observed the same response as Dr. Riggins. Dr. Knowles also noted in his affidavit, made three days after the show on September 5, that as the horse walked away it "walked freely and led with a loose rein."
 
 
 14
 After examining Pride's Dixie Queen, Dr. Knowles prepared a Summary of Alleged Violations, describing both veterinarians' findings. Both doctors signed the form. This form is reserved for instances when USDA doctors declare that a horse is "sore" under the definition in the Act. Drs. Riggins and Knowles both testified that in their opinions the pain was caused by chains or caustic chemicals. Dr. Knowles testified that he had found horses sore due to fungal infections in the past, but had not made out a Summary of Alleged Violations for those horses because the soreness had not been caused by artificial means.
 
 
 15
 Ten to twenty-five minutes after the examination by the USDA doctors, Dr. Ray Miller, a private veterinarian who works for horse owners, examined Pride's Dixie Queen. He palpated the horse's feet and watched the horse move about, and concluded that the horse exhibited some sensitivity upon palpation but was not sore under the definition in the statute. Miller stated under cross-examination that "I did get some very mild reaction to more than normal pressure. But I didn't get any specific points of reaction that would lead me to believe there was a pain response." He opined that a fungus could cause the horse to exhibit a palpation response. This opinion was also held by Dr. Baker, who testified on behalf of Martin and the Wilsons.
 
 
 16
 The USDA filed a complaint on March 6, 1991, alleging that Martin and the Wilsons had violated the Horse Protection Act. A hearing was held on June 30 and July 1, 1992, before Administrative Law Judge Paul Kane. The ALJ dismissed the complaint, finding that Martin and the Wilsons had rebutted the statutory presumption of "soreness" found at Sec. 1825(d)(5), by producing evidence that the pain responses were the result of natural, not artificial, causes. The ALJ determined that Dr. Baker's testimony that the horse had a fungus, and that irritation could occur in the absence of visible symptoms, plus the evidence that the fungus reappeared in the horse after the inspection, "persuasively rebuts the presumption that the horse's pain resulted from unnatural, prohibited causes." ALJ Dec. at 13. The ALJ also found that, in the absence of the presumption, this alternative explanation effectively countered the evidence of soreness produced by the USDA.
 
 
 17
 The Judicial Officer (JO) reversed, adopting Judge Kane's findings of fact but rejecting his conclusions, and rejected his inference that Pride's Dixie Queen was sore due to a fungal infection. The JO emphasized that USDA only needed to show by a preponderance of the evidence that the horse had been sored by artificial means, citing Fleming v. USDA, 713 F.2d 179 (6th Cir.1983). He discounted Dr. Miller's examination, which took place between ten and twenty-five minutes after the official exam, because a topical anesthetic could have masked the horse's pain. He stated that Dr. Baker, who had last examined the horse 90 days before the show, could not testify with any degree of certainty that the fungus was present on September 2, to provide evidence to rebut the presumption. JO Dec. at 19-20. The JO stated further that the opinion that a fungus caused the horse's soreness was just the "conjecture and speculation of expert witnesses' opinions...." JO Dec. at 27. The JO also noted that the horse had been shown at least five other times during 1989 following treatment for the fungus, and had shown no soreness. The JO said this detracted from Martin's and the Wilsons' theory that the fungus was "deep seated" because the horse would have been sore on those other occasions, and that soreness would have been detected by USDA inspectors. The JO therefore found that Petitioners had not rebutted the presumption that Pride's Dixie Queen's soreness was caused by artificial means.
 
 
 18
 The JO further found that USDA has proved by a preponderance of the evidence that Pride's Dixie Queen was sore, without relying on the statutory presumption. The JO noted that the Summary of Alleged Violations signed by the two doctors indicated that the horse experienced pain when examined, and that in the doctors' professional opinions this pain was caused by "devices/chains" or "caustic agents/chemicals." JO Dec. at 28. In addition, the JO noted that the horse exhibited no signs of fungal infection, which would demonstrate a natural source of the soreness. Thus, USDA had proven the violation of the Horse Protection Act without resort to the statutory presumption. The JO assessed a $2000 penalty against Martin and a $2000 penalty against the Wilsons jointly, and disqualified them from showing or participating in any horse show for one year.
 
 III
 
 19
 We first consider whether substantial evidence supports the JO's decision that the Petitioners failed to rebut the statutory presumption that Pride's Dixie Queen was sore.
 
 
 20
 Tennessee Walking Horses are known for their high stepping gait, which, while partially natural, may also be induced by creating soreness in the horse's front legs through applying chemical blistering agents, chains, tacks, or other devices. In 1970, Congress prohibited the showing of "sored" horses. In 1976, Congress toughened these laws by creating a presumption of soring when a horse exhibits abnormal sensitivity, and, in the case of civil violations, eliminating a requirement of specific intent to sore. See Fleming v. USDA, 713 F.2d 179, 181-82 (6th Cir.1983). Section 1825(d)(5) creates a presumption that a horse is "sore" under the statute if "it manifests abnormal sensitivity or inflammation in both of its forelimbs or both of its hindlimbs."
 
 
 21
 This court reviews a USDA decision under the Horse Protection Act to determine whether the proper legal standards were employed and whether substantial evidence supports the decision. 15 U.S.C. Sec. 1825(b)(2). Substantial evidence consists of evidence adequate for a reasonable fact finder to reach the conclusion. Fleming, 713 F.2d at 188. Substantial evidence:
 
 
 22
 [I]s more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.
 
 
 23
 Murphy v. Secretary of HHS, 801 F.2d 182, 184 (6th Cir.1986) (citations omitted). The JO is not bound by the ALJ's determination, and is free to draw his own inferences, so long as substantial evidence supports the JO's conclusion. Rowland v. USDA, 43 F.3d 1112, 1114 (6th Cir.1995).
 
 
 24
 Petitioners argue that substantial evidence was not produced to show that the horse was "abnormally sensitive" in order to trigger the presumption. They assert that Dr. Knowles's testimony should not be credited, because he has no present recollection of examining Pride's Dixie Queen and relied on the affidavit and Summary of Alleged Violations completed at the time.
 
 
 25
 This argument is much like one made in Gray v. USDA, 39 F.3d 670 (6th Cir.1994). In that case, we rejected the argument. We noted there that the Administrative Procedures Act allows agencies to receive "any oral or documentary evidence," 5 U.S.C. Sec. 556(d), and that the affidavit and Summary of Alleged Violation were just the kind of evidence "upon which responsible people are accustomed to rely." Gray, 39 F.3d at 676. Whether the evidence is technically hearsay is not important; instead we examine whether the evidence is probative and its use "fundamentally fair." Ibid. (citing Calhoun v. Bailar, 626 F.2d 145, 148 (9th Cir.1980)).
 
 
 26
 As in Gray, the Summary of Alleged Violation and Dr. Knowles's affidavit at issue here meet these requirements. The documents were created almost contemporaneously with the examination, and the doctors who made the entries testified at the hearing and were subject to cross-examination. Petitioners are wrong to claim that Dr. Knowles's lack of present memory vitiates the evidentiary value of these documents. After careful review of the record, we conclude that the USDA produced substantial evidence that the horse was "abnormally sensitive" so as to trigger the statutory presumption.
 
 
 27
 However, the issue of whether the presumption was rebutted by Petitioners is more difficult. The ALJ found that Petitioners had rebutted the presumption, by providing evidence that the sensitivity was caused by a recurring fungal infection, rather than by artificial means. The JO rejected this inference, noting that the USDA's doctors found no evidence of fungus and had opined that the soreness was caused by artificial means. We believe that the JO failed to credit adequately the evidence that the horse's fungus was recurring, and had in fact visibly erupted again about nine days after the show at issue in this case, after the trainer stopped applying medication. We find that Petitioners rebutted the presumption that soreness was a result of artificial means, by producing testimony that Pride's Dixie Queen suffered from a recurring fungus, and expert testimony that this fungus could cause sensitivity without being visible.
 
 
 28
 We recognize that the USDA veterinarians stated that the horse's soreness was from artificial means. The record does not demonstrate any evidence or reasoning to support the examining doctors' belief that the soreness was caused artificially. It appears from the testimony that they reached their conclusion without observing any specific evidence of chemical or physical injury to the horse. For example, they did not record observing scars, see Rowland v. USDA, 43 F.3d 1112 (6th Cir.1995) or irritation, inflammation, or evidence of use of caustic chemicals. See Elliott v. Administrator, APHIS, 990 F.2d 140, 146 (4th Cir.), cert. denied, 114 S.Ct. 191 (1993); Thornton v. USDA, 715 F.2d 1508 (11th Cir.1993). Their only specific observation was that the horse "showed excessive movement of the forelimbs along with tightening of the abdominal muscles" when palpated by Dr. Riggins, and a "mild pain response" in her left foot and a "moderate pain response" in her right foot when palpated by Dr. Knowles. Dr. Riggins speculated at the hearing that such a response would not be due to a fungal infection that was not visible, but admitted he had no basis for this belief.
 
 
 29
 We hold that, once the party accused of soring the horse has produced credible evidence of a natural cause for the soreness, the agency must produce evidence that the horse was made sore by artificial means. Otherwise, the USDA's detection of "abnormal sensitivity," which does not require a finding that the soreness was caused artificially, would always control the result. Substantial evidence that indicates artificial soring is not present in this record.
 
 
 30
 We believe it is important to note that Pride's Dixie Queen could not be shown in any case; under the show's rules, a horse demonstrating any abnormal sensitivity is disqualified.[2] Our concern is directed at whether USDA showed that the Petitioners here deserved the penalties provided under the Horse Protection Act. The language of the statute demonstrates that Congress intended to punish individuals who sore horses by artificial means. In addition, the penalties are such that due process requires that the presumption in Sec. 1825(d)(5) merely shifts the burden to produce evidence rebutting the presumption, not the ultimate burden of persuasion that the horse was sored by artificial means. See Landrum, 40 Agric Dec. 922 (1981), 1981 WL 31848 at * 3. Hence, those found entering a horse with abnormally sensitive feet can rebut the presumption that the soreness was artificially caused. Again, once the accused party submits credible evidence that rebuts the presumption, it is for USDA to prove that the horse's soreness was caused by artificial means.
 
 IV
 
 31
 Since the JO also determined that USDA proved that Pride's Dixie Queen was sore without resort to the statutory presumption, we next examine whether this conclusion was supported by substantial evidence.
 
 
 32
 As noted before, we agree that USDA produced substantial evidence that Pride's Dixie Queen had sore feet. However, the definition of "sore" in Sec. 1821(3) requires finding that a horse has been treated with a chemical irritant by a person, has been burned, or cut by a person, has been injected with a tack, nail, screw or chemical agent by a person or "any other substance has been used by a person;" and as a result the horse suffers pain while walking. 15 U.S.C. Secs. 1821(3)(A)-1821(3)(D). If soreness is caused by natural means, the horse is not "sore" for purposes of the statute.
 
 
 33
 The examining doctors stated that the horse had been sored by artificial means, but as discussed above, the record does not contain any evidence, beyond the bare conclusions stated in the Summary of Alleged Violations and Knowles's accompanying affidavit, to support their statement. In addition, the record contains evidence that this soreness had a natural cause.
 
 
 34
 The JO in this case noted that palpation alone, in his view, was a "highly reliable method for determining whether a horse is sore." JO Dec. at 17. However, if soreness detected by palpation is always sufficient to find a horse "sore" for purposes of the Act, individuals would never have the opportunity to produce evidence that the soreness was caused by natural means. The JO's analysis in the case seems to contradict the clear language in the statute requiring that "soring" be caused by artificial means.[3]
 
 
 35
 Therefore, we find that the JO's decision that Pride's Dixie Queen was sore is not supported by substantial evidence, because the record, taken as a whole, does not demonstrate that the horse's soreness was as a result of artificially applied chemical or physical agents, rather than a naturally occurring fungus. Unlike other cases in which we have found "soring" that meets the requirements of the statute, the doctors here did not find that the horse's soreness was in such a pattern or so severe that there could be "no other means of producing this pattern of inflammation," Gray, 39 F.3d at 677, nor did the doctors find scars and lesions that indicate of use of chemical agents and mechanical devices, Fleming v. USDA, 713 F.2d at 188.
 
 IV
 
 36
 We find that the Petitioners rebutted the statutory presumption that "abnormal sensitivity" indicates a horse had been sored in violation of the Horse Protection Act, and that the record does not contain substantial evidence to support the JO's conclusion that USDA defeated this rebuttal with evidence of artificial soring. In addition, we find that the JO's conclusion that USDA established that the horse's feet were sore without resort to the statutory presumption is likewise not supported by substantial evidence. Accordingly, the judgment of the Secretary of Agriculture is REVERSED.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Any person found in knowing violation of Sec. 1824 can be subject to criminal penalties under 15 U.S.C. Sec. 1825(a). In addition, under Sec. 1825(b)(1), "[a]ny person who violates section 1824 of this title shall be liable to the United States for a civil penalty of not more than $2,000 for each violation." Under Sec. 1825(c), violators of Sec. 1825(b) may be disqualified "from showing or exhibiting any horse, judging or managing any horse show, horse exhibition, or horse sale or auction for a period of not less than one year for the first violation and not less than five years for any subsequent violation."
 
 
 [2]
 Furthermore, horse shows are liable for penalties and subject to disqualification under Sec. 1825 for violation of Secs. 1824(3)-(7)
 
 
 [3]
 The JO's Decision refers us to his decision in In re Kelly, 52 Agric.Dec. 1278 (1993), 1993 WL 588363 (U.S.D.A.), appeal dismissed, 38 F.3d 999 (8th Cir.1994), which more fully explains his view that palpation alone is a reliable indicator of soreness. We emphasize that we have no quarrel with whether palpation is effective to determine whether a horse's feet experience pain. However, we note that the horse owners and trainers in In re Kelly did not attempt to rebut this diagnosis with evidence that the horse's soreness was due to natural causes. Therefore, USDA did not need to demonstrate that the soreness was due to the application of artificial irritants