NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0671n.06

No. 10-3455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Sep 14, 2011**

LEONARD GREEN, Clerk

KIMBERLY COPHER BACK;
RICHARD EVANS,

      Petitioners,

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE; UNITED
STATES OF AMERICA,

      Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF
AN ORDER OF THE
SECRETARY OF THE UNITED
STATES DEPARTMENT OF
AGRICULTURE

OPINION

**Before: CLAY and STRANCH, Circuit Judges; BARRETT, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge.** Petitioners Kimberly Copher Back and Richard

Evans seek review of a final decision of the Secretary of the Department of Agriculture ("USDA")

concluding that they violated provisions of the Horse Protection Act of 1970 ("HPA"), 15 U.S.C.

§§ 1821–31, by entering and showing a sore horse named Reckless Youth in a horse show. A "sore"

horse, as this Court has previously explained, is one "on which chemicals or other implements have

been used on its front feet to make the horse highly sensitive to pain causing the horse to lift its feet

quickly, reproducing the distinctive, high-stepping gait that show judges look for in Tennessee

_____

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of
Ohio, sitting by designation.

Walking Horses." *Derickson v. United States Dep't of Agric.*, 546 F.3d 335, 337 n.1 (6th Cir. 2008) (internal quotation marks omitted). For the following reasons, we **DENY** the petition for review.

## I. BACKGROUND

On April 20, 2007, Reckless Youth, a Tennessee Walking Horse, was entered in the Spring Jubilee Charity Horse Show in Harrodsburg, Kentucky. The horse was trained by Evans and owned by Back. Prior to the start of the competition, Evans presented the horse for inspection by Greg Williams, a Designated Qualified Person ("Qualified Person") retained by show management to inspect participating horses. Williams, who is not a veterinarian, inspected the horse and found no soreness or any other abnormality that would preclude it from participating in the show.

Back rode the horse during the show and finished in third place. After the show, two USDA Veterinary Medical Officers ("VMOs" or "Vets"), Drs. Miava Binkley and Lynn Bourgeois, independently examined Reckless Youth and concluded that it was "sore" within the meaning of the HPA. Their examination utilized a technique called digital palpation, which involves the application of pressure to a horse's legs and feet to detect any unusual signs of soreness. *See* 9 C.F.R. § 11.21(a)(2). Binkley and Bourgeois documented their findings on a USDA Summary of Alleged Violations form ("Violations Form") and in affidavits executed the day after the show. When Dr. Binkley digitally palpated Reckless Youth's feet, she found the horse withdrew both front feet several times and did so strongly in response to palpation of one area. Binkley found this to be "a marked pain response."

After finishing her examination, Binkley invited Williams to reexamine the horse. Upon reexamination, Williams again found no sensitivity on the horse's left foot and slight initial response

2

on his right foot. Binkley testified that she observed Williams doing his reexamination and, in her view, he applied insufficient pressure when he was doing his palpation. Williams testified to his belief that he applied the appropriate amount of pressure.

Dr. Bourgeois then examined the horse and found results similar to Binkley. According to Bourgeois, digital palpation of several specified parts of the horse's feet "elicited repeated, reproducible pain responses" that were characterized by attempts to withdraw the limb and strong clenching of shoulder and abdominal muscles. He opined that the horse was sored by chronic application of caustic chemicals and overwork in chains. Binkley and Bourgeois both signed the Violations Form, which illustrated the sore locations on the horse's feet.

On October 22, 2007, the Acting Administrator of the USDA's Animal and Plant Health Inspection Service ("APHIS") initiated disciplinary proceedings against Back and Evans. The complaint, in relevant part, alleged that Evans entered Reckless Youth in the Harrodsburg horse show while the horse was sore in violation of 15 U.S.C. § 1824(2)(B), and that Back showed the sore horse in violation of 15 U.S.C. § 1824(2)(A). A hearing was held before an Administrative Law Judge ("ALJ") on February 2, 2009.

On May 12, the ALJ issued an order dismissing the complaint, noting that the Vets relied exclusively on digital palpation to determine whether Reckless Youth was sore. Although the ALJ recognized that "exclusive reliance upon the use of digital palpation to determine whether a horse has been sored has . . . been upheld in numerous cases, including both the Sixth and District of Columbia Circuits," he determined that the USDA's use of the "scientific" technique had never been evaluated using the criteria set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

3

113 S. Ct. 2786 (1993). The ALJ then applied the admissibility factors set forth in *Daubert*, and concluded that the use of palpation evidence to establish soreness is not sufficiently scientific to be a reliable diagnostic means under the *Daubert* standard. The ALJ discredited the Vets' findings and determined that there was insufficient evidence that Reckless Youth was sore.

The Government filed an appeal with the USDA's Judicial Officer ("JO"), who serves as the Secretary's final decisionmaking authority. *See* 7 C.F.R. § 2.35. On March 17, 2010, the JO reversed the ALJ's decision, finding that the affidavits and Violations Forms submitted by the Vets constituted significant evidence that the horse was sore in each front foot. The JO specifically rejected the ALJ's critique of palpation, concluding that digital palpation is a valid and appropriate method for determining whether horses are sore under the HPA. He also found that Williams erred during his examination of the horse, presumably referring to Williams' alleged failure to apply sufficient pressure. Each of the petitioners was fined $2,000 and disqualified from showing or exhibiting horses for one year. Petitioners filed a timely petition for review of the Secretary's decision in this Court.

## II. ANALYSIS

### A. Standard of Review

We review a decision of the USDA under the Horse Protection Act only to determine "whether the proper legal standards were employed and substantial evidence supports the decision." *Fleming v. United States Dep't of Agric.*, 713 F.2d 179, 188 (6th Cir. 1983). "Substantial evidence means more than a scintilla but less than a preponderance of the evidence, and must be based upon

the record taken as a whole." *Lacy v. United States Dep't of Agric.*, 278 F. App'x 616, 619 (6th Cir. 2008) (internal quotation marks omitted).

An administrative agency's Judicial Officer "sitting in review of an ALJ's initial decision . . . is authorized by statute to substitute [his] judgment for that of the ALJ." *Parchman v. United States Dep't of Agric.*, 852 F.2d 858, 860 n.1 (6th Cir. 1988) (internal quotation marks omitted). "When an administrative agency disagrees with the conclusions of its ALJ, the standard does not change; the ALJ's findings are simply part of the record to be weighed against other evidence supporting the agency." *Rowland v. United States Dep't of Agric.*, 43 F.3d 1112, 1114 (6th Cir. 1995) (internal quotation marks omitted). "If substantial evidence supports the Secretary's decision and the proper legal standards were employed, we must affirm his decision." *Id.*

## B.      Propriety of the Secretary's Decision

The HPA, in relevant part, prohibits the "showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore." 15 U.S.C. § 1824(2)(A). It also prohibits the "entering for the purpose of showing or exhibiting in any horse show or horse exhibition" a "sore" horse. *Id.* § 1824(2)(B). As noted above, a horse is generally considered sore under the HPA "if chemicals or other implements have been used on its front feet to make them highly sensitive to pain." *Lacy*, 278 F. App'x at 619 (citing and paraphrasing statutory definition of "sore" in 15 U.S.C. § 1821(3)). Importantly, "[i]n any civil or criminal action to enforce [the HPA] . . . a horse shall be presumed to be . . . sore if it manifests abnormal sensitivity or inflamation in both of its forelimbs or both of its hindlimbs." 15 U.S.C. § 1825(d)(5). On appeal, Evans and Back assert several arguments

5

challenging the JO's determination that Reckless Youth was "sore" under the HPA. Each argument lacks merit.

First, Evans and Back claim that the JO's opinion was based exclusively on digital palpation, which they contend is not a sufficiently probative and reliable method of detecting soreness. Although a divided panel of one circuit court has been receptive to a similar argument, *see Young v. United States Dep't of Agric.*, 53 F.3d 728 (5th Cir. 1995), this Court has expressly rejected it, holding that "a finding of 'soreness' based upon the results of digital palpation alone is sufficient to invoke the rebuttable presumption of 15 U.S.C. § 1825(d)(5)." *Bobo v. United States Dep't of Agric.*, 52 F.3d 1406, 1413 (6th Cir. 1995); *see also Martin v. United States Dep't of Agric.*, 57 F.3d 1070, 1995 WL 329255, at *6 n.3 (6th Cir. 1995) (unpublished table opinion) ("emphasiz[ing] that we have no quarrel with whether palpation is effective to determine whether a horse's feet experience pain"). Both Vets in this case digitally palpated Reckless Youth and both concluded that the horse was sore. They also documented their findings shortly after the show and were subject to cross examination before the ALJ. As this Court has recognized on multiple occasions, Vets' findings may constitute "substantial evidence that the horse was 'abnormally sensitive' so as to trigger the statutory presumption" of soreness, *Martin*, 1995 WL 329255, at *5, particularly where, as here, the Vets were experienced and well-qualified. *See Turner v. U.S. Dep't. of Agric.* 217 F. App'x 462, 468 (6th Cir. 2007).

Second, Evans and Back ask this Court to re-examine our existing precedent regarding the propriety of digital palpation as a method of detecting soreness. In particular, they rely on the Supreme Court's decision, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which established the

general requirements for the admissibility of expert testimony under Federal Rule of Evidence 702. 509 U.S. at 592–94. Because we are bound by our previous post-*Daubert* holdings that digital palpation is sufficiently probative and reliable to give rise to a presumption of soreness, we decline petitioners' invitation to reconsider the issue. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 839–40 (6th Cir. 2010) (refusing to reconsider issue decided by previous panel "[b]ecause [the Court is] bound by the prior panel's decision"). Nonetheless, we note that *Daubert*'s applicability to administrative proceedings is doubtful, *cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005), and, in any event, the record before us falls short of persuading us that digital palpation is an unreliable technique for detecting soreness.

Third, Evans and Back argue that the presumption of soreness applied in this case essentially shifted the burden of persuasion to them, in violation of due process. Although we have embraced a lower-court decision holding that "[d]ue process forbids the presumption . . . from shifting the burden of persuasion to defendants," in doing so we expressly noted that "the presumption may constitutionally shift the burden of going forward with the evidence once the Secretary has introduced evidence of abnormal sensitivity." *Martin*, 1995 WL 329255, at *5 (quoting *Landrum v. Block*, 40 Agric. Dec. 922, 925 (M.D. Tenn. 1981)) (alterations and internal quotation marks omitted).

The ultimate burden of persuasion is not impermissibly shifted merely because the applicable presumption relieves the Government of having to present additional evidence "that the horse was made sore by artificial means." *Id.* Accordingly, once the Government introduced the digital-palpation evidence sufficient to give rise to a presumption of soreness, Evans and Back were

7

required to rebut the presumption by, for example, presenting "credible evidence of a natural cause for the soreness." *Id.* They point to no such evidence in the record. They contend, instead, that the presumption of soreness was sufficiently rebutted by Williams' finding that Reckless Youth was not sore. While a Qualified Person's contrary finding may detract from the weight of the evidence supporting the Government's case, it is not necessarily sufficient to establish that a JO's decision lacks substantial supporting evidence. *See, e.g.*, *Groover v. USDA*, 64 Agric. Dec. 1434, 1437 (6th Cir. 2005) (holding that Secretary's finding of soreness based on testimony from Vets was supported by substantial evidence despite conflicting opinions of two Qualified Persons). The JO could reasonably determine that Williams, who was not a veterinarian, was "not as careful as [he] should have been or [was] not as expert as the VMOs." *McConnell v. United States Dep't of Agric.*, 198 F. App'x 417, 422 (6th Cir. 2006). As a result, the presumption of soreness properly arising from the findings of the Vets was not rebutted and the Secretary's determination stands.

## CONCLUSION

For the reasons stated, we find the evidence in the record to be sufficiently detailed as to constitute substantial evidence that Reckless Youth was sore when the Vets examined him. Accordingly, we **DENY** the petition for review.